## J. J. Ferguson v. The State.

*No. 7953. Decided June 22.*

1. **Theft of Horse — Continuance — Motion for New Trial.**—By defendant's first application for continuance, for the testimony of four absent witnesses, it is shown that it was expected to be proved by two of said witnesses that one K. was in possession of, claimed, and controlled the horse prior to defendant's purchase of it; and by the other two, that defendant purchased said horse from K. *Held*, that the court erred in overruling the motion for a new trial based upon this absent testimony.

2. **Defendant's Testimony — Impeachment of, by Contradictory Statements while under Arrest.**—When defendant was testifying in his own behalf, a predicate was laid for his impeachment by contradictory statements made by him to the sheriff, while under arrest. He denied making the statement. The sheriff was then put upon the stand to prove the statement. Defendant objected to the evidence as incompetent and inadmissible, because, at the time it was made, if at all, he was under arrest and had not been warned that it might be used against him. *Held*, that the court did not err in overruling the objections, and in admitting the testimony. The statute, article 750, Code of Criminal Procedure, relates solely to "*confessions*," that is, *inculpatory statements* which connect, or tend to connect, defendant directly or indirectly with the crime, and does not include within its meaning and provisions *exculpatory statements*, such as the one proposed to be proved, which was that defendant had purchased the horse from a different party than the one he had testified he had bought it from. See concurring opinion of Simkins, J. Hurt, P. J., dissents, and holds that the statement made by appellant while under arrest, without caution, was not admissible for any purpose.

3. **Same.**—While contradictory statements made by a defendant as to his possession of property recently stolen, may be given in evidence, yet such statements have not been held to be "*confessions*" under the statute. The State is not required to disprove "*confessions*" in order to convict, but must do so only when the account given of possession is not a confession, and is at the same time reasonable and probably true.

**4. Impeaching Testimony not Necessary to be Limited and Restricted by Charge of the Court, when.**— Notwithstanding contradictory statements of a defendant, which are exculpatory, are legitimate and admissible as impeaching evidence, still such evidence is also original testimony, and being original testimony, it is not necessary that the charge of the court should limit it as impeaching evidence.

APPEAL from the District Court of Llano.    Tried below before Hon. W. M. ALLISON.

Appellant was indicted for the theft of a horse, the property of one S. B. Pentecost, and at his trial was convicted, with punishment assessed at five years confinement in the penitentiary.    Pentecost, the owner, lived in Callahan County, but the horse's range was in Brown County before he was taken to Callahan County, and in July the horse left his range in Callahan and went back to Brown County.    Pentecost hunted for him in the range in Brown, and some time in August or September he learned that the horse was in Llano County, and going there he found him in the possession of one Lou Hillmon.    It was proved by the Hillmons that the defendant traded the stolen horse to Lou Hillmon in August, 1891.    At the time appellant traded the horse to Hillmon, he was passing under the name, and called himself, J. J. Ferguson, his real name being Horace Marr.

The defendant testified as follows:  "My name is Horace Marr.   I live in Brown County, Texas.   I purchased two horses from Scott Keeler about the 1st of August, 1891, at John Fry's house.   I traded one to Lou Hillmon.   John and Robert Fry and Grundy Caviness were there. The other horse was a gray horse, which I got from Keeler at the same time.   I rode the gray horse in John Fry's pasture.   John Fry is my uncle.   Keeler gave me a bill of sale to the horse, but I lost it.   I gave Keeler $25 in cash and my note due October 1, 1891, for $25 for two horses. I was going down to Llano County, and I took the horses with me, and traded the bay horse to Lou Hillmon and the gray horse to Ned Holden. I called myself J. J. Ferguson while there.   I did it because I was advised by my father and my uncle to dispose of the two horses under an assumed name; that Keeler was a thief, and I had better get rid of the horses; that the title to the horses might not be good.    After trading the horses I went down below Bluffton, in Llano County, to see my uncles, Allen Marr, Bud Marr, and Tobe Ball, who lived there.    I did not know that the horses were stolen until I was arrested."

Cross-examined:  "I got the horses that I traded in Llano county to Hillmon and Holden from Scott Keeler, and heard from my father and uncle that the title to the horses was probably bad.    My father told me that Keeler was a thief.    Within four or five days from the time I got the horses I started with them to Llano County.    I traded the horses under the name of J. J. Ferguson, because I was afraid they were stolen.

I went by the name of Ferguson all the time while at Hillmon's.   I don't remember telling Ben A. Ligon, sheriff of Llano County, in Brownwood, in January, 1892, that I got the horses I traded to Hillmon and Holden from a man by the name of J. J. Ferguson, near the town of San Saba, in San Saba County.''

Ben A. Ligon, for State, says:   '' The defendant told me in Brownwood, Brown County, Texas, in January, 1892, that he got the horses, traded to Lou Hillmon and Ned Holden, from a man by the name of J. J. Ferguson, near San Saba town, in San Saba County.

'' Defendant was under arrest at the time that he told me this, and had not, at the time, been warned that any statements he might make would be used against him as evidence in this case.''

The testimony of Ligon was objected to by defendant, because, at the time, defendant was under arrest.   The court held, '' that the evidence was admissible, upon the ground that, when the defendant took the stand, voluntarily, in his own behalf, he was subject to the same rules as any other witness.''

In connection with this testimony, defendant also saved a bill of exceptions to the charge of the court, in that it did not limit and restrict said testimony to the only purpose for which it could be considered by the jury, to-wit, as impeaching testimony.

Before announcing ready for trial, defendant had made an application for continuance for the testimony of four witnesses, by whom he expected to prove the possession by and his purchase of the horse in question from one Scott Keeler, which motion for continuance was overruled and bill of exceptions reserved.   The matter was again pressed upon the court in the motion for new trial, which was also overruled.

*John E. Bell*, for appellant.—I respectfully call the attention of the court to that part of the record which complains of the error of the trial court in permitting the witness Ligon to testify to statements made by accused when he was under arrest.   I am aware that this court has decided this precise question adversely to my contention, but I respectfully and earnestly insist that that decision is wrong, is contrary to the plain spirit and letter of the law, and not supported by authority or reason.

I have no apology for attacking this decision, and I do so the more readily because I believe that the court is aware of my admiration for its learning and integrity.

A careful review of the court's opinion in the Quintana case, 29 Texas Court of Appeals, 401, and the authorities there cited, will demonstrate the fallacy of that opinion beyond quibble.   Before we take up that opinion let us first glance at the statute.   Article 730 of the Code of Criminal Procedure has reference to the enumeration of persons who may not testify as witnesses in criminal actions.   Article 750 of the same code is under

an entirely different head, and has reference only to confessions. The Act of 1889, repealing exception 4 to article 730, did no more than permit the defendant to testify in his own behalf. Article 750 is nowhere mentioned in the act, and is not repealed by it, through even the remotest implication; and, so far as I know, it has never been insisted that the act had that effect.

The grounds for the Quintana decision seem to be that when the accused takes the stand as a witness, "For the time being, to some extent, at least, he loses his identity as defendant and becomes a witness in the case. And when he occupies that position he may be subjected to the same tests, and may be contradicted and impeached as any other witness." This proposition is undoubtedly correct, in the absence of a statute declaring the law to be otherwise. Let me here state two propositions, one of which is the law, and the other is not.

1. When a defendant voluntarily undertakes to testify in his own behalf, the State has the right to subject him to the same tests, and to contradict and impeach him as any other witness, except in so far as this right may be abridged by the statute.

2. When a defendant voluntarily undertakes to testify in his own behalf, the State has the right to subject him to the same tests and to contradict and impeach him as any other witness, statutes to the contrary notwithstanding.

I claim that the first proposition is law, and the opinion of the court in the Quintana case virtually decides that the second proposition is law. To state the second proposition is its complete refutation; but I maintain that this is the logical result of the decision. In not one of the States, whose decisions are cited in support of that case, is there a statute even remotely similar to article 750. For this reason, I again earnestly insist that those authorities are not in point; and now propose to review them for the dual purpose of showing that they do not support that case, and by every reasonable construction they are precedents for the rule contended for by appellant.

Let us first examine the Peck case, 86 Tennessee, 259, since that case seems to be the one mainly relied upon by the court. Peck was convicted for murder in the second degree. On the trial of the case the defendant, under a then recent act of the Legislature, almost identical with our Act of 1889, testified in his own behalf. The State introduced witnesses to impeach the defendant for truth and veracity. Under the peculiar, but admirable, decisions of that State, this may be done, not only by showing that his general reputation for truth and veracity is bad, but the entire moral character of the witness may be inquired into. This is all that was done in the Peck case, and the trial judge charged the jury that this testimony was admitted solely for the purpose of enabling them to determine what weight the defendant's testimony was entitled to, as a witness, and

not for the purpose of weakening the presumption of innocence which the law throws around him.

No one denies that the defendant may be impeached as any other witness, except in so far as the statute forbids; and if our decisions permitted any other witness to be impeached by testimony of general moral character, the defendant in Texas would be subject to the same rule. He certainly may be impeached by showing that his general reputation for truth and veracity is bad, and he may be as fully and as rigidly cross-examined as an other witness, about any matter not expressly forbidden by the statute.

In the Peck case, the defendant's complaint was that the admission of such evidence operated to destroy the elementary principle of law, that the State can not go into proof of the general character of the accused until he first opens the door. (But, mark you, this is a common law, and not a statutory principle in Tennessee.) The court held, and very properly, that this contention was not logical, because he had opened the door by voluntarily placing himself upon the stand, and voluntarily subjecting himself to be attacked as other witnesses, when he was safe from such an attack so long as he remained the accused only.

Now, suppose there had been in Tennessee a statute providing that the State can not go into proof of the general character of the accused at all, would any one suppose for a moment that the action of the trial court could be sustained? In that opinion (86 Tennessee, 262) we find this sentence, which clearly announces the whole law of the subject: "When he elects to place himself upon the stand as a witness, he can be treated in all respects as any other witness, with the same privileges and the same burthens, no more and no less, except so far as the Legislature has provided."

Where does this learned court find in the Peck case any authority for deciding that the defendant's statement while under arrest may be used for impeachment or any other purpose, in the very teeth of the statute? Clinton's case, 67 Missouri, 380; Cox's case, Idem, 392; Rugan's case, 68 Missouri, 214; Buella's case, 1 Southwestern Reporter, — (also a Missouri case), are identical in principle with Peck's case, and precisely in the same line. In Missouri there is no statute which even bears the faintest resemblance to ours; in Missouri, as in Tennessee, a witness may be impeached by showing his general moral character to be such as not to entitle him to credit among his fellow men.

Please notice that it has been held in all the States where this peculiar rule does not apply, that when the defendant takes the stand as a witness, he may be impeached by showing his general reputation to be bad for truth; but his general moral character can not be inquired into. Fletcher's case, 49 Ind., 124; Mershon's case, 51 Ind., 14; Brandon's case, 42

N. Y., 265; Allen's case, 66 Miss., 386. The reason given for these decisions is, that it would be incompetent in those States to impeach any other witness in that way, and this leads me to this proposition, which I challenge any man to gainsay:

A witness can not be impeached except by competent evidence. To state the proposition is to prove it. It is so simple that no precedent could better establish, and no argument better explain it.

I lay down another proposition:

By the terms of our statutes, as construed by this court, the statements of the defendant, made while under arrest, are declared to be incompetent evidence. I defy any counsel or court to deny either of these two propositions, from which I propose now to construct the following syllogism:

A witness can not be impeached except by competent evidence.

The statements of the accused while under arrest are not competent evidence.

Hence a witness can not be impeached by the statements of the accused while under arrest.

To this argument I invite your most scrutinizing criticism.

I do not deny that when the reason for a common law rule ceases to exist, the rule no longer applies; but this principle can not be applied to a statute. There is only one single instance wherein the court ever can be called upon to inquire into the reasons upon which a statute is based, and that is upon a question of construction. The construction of article 750 has long since been settled, and this court has nothing to do with the reasons upon which it rests. But I am prepared to dispute the idea that article 750 was based upon the fact that the defendant could not testify. Its origin was in the crystalized knowledge of the Legislature, gathered from the experience of ages, that statements made under such conditions are extremely unreliable. Roscoe's Crim. Ev., 17 ed., p. 40; Warren's case, 29 Texas, 369; Phill. on Ev., 86; 1 Greenl. on Ev., 219; Whart. Crim. Ev., 8 ed., 650, 651. It breathes the same principle, and is born of the same thought that excludes confessions made under duress. And this leads me to request your thoughtful investigation of the following very analogous illustration:

The defendant has taken the stand; he has testified that he was not guilty of rape; that when the crime was committed he was at such a remote distance from the scene, he could not have been the perpetrator.

The district attorney, for the purpose of impeachment, if you please, puts this question, "Did you not, on the night after you were arrested, in the jail of Travis County, when a mob went in there with a rope and with guns, and threatened to hang you upon the spot unless you told the truth, did you not then and there state that you did not commit the rape

yourself, but that you stood by and saw your codefendant do it? Answer yes or no.''

Counsel for defendant objects, because the evidence is denounced by the statute as incompetent. The objection is overruled, and the testimony is admitted for the purpose of impeachment (?) only, and the jury have for their consideration testimony which the statute declares incompetent for any purpose; testimony which the wisdom of mankind, born of bitter experience, denounces as dangerous and unsafe; and testimony admitted, not according to law, but in spite of law, and directly in the face of the statute. The claim that it is admitted for the purpose of impeachment only, is a snare and a delusion; it is an insidious cloak to hide the true character of the transaction; it is a Trojan horse, dragging into the case its deceptive carcass filled with illegal testimony—the eternal foe of justice and the fruitful agent of judicial crimes.

I earnestly beseech the court to overrule the Quintana case. It is wrong in principle, and should not stand as a precedent for the future. There should be no case upon the records of this court to which anyone could point as a precedent to override and annul the plain, unequivocal statute.

*John P. White* and *Milton White*, also for appellant.—1. The court committed reversible error in overruling the application for continuance as to the witness Grundy Caviness, it being the first application for continuance, (1) because diligence was perfect; (2) because his testimony was most material and probably true. Code Crim. Proc., art. 560, subdiv. 6; Harris v. The State, 18 Texas Ct. App., 287; Irvine v. The State, 20 Texas Ct. App., 12; Willson's Crim. Stats., sec. 2169.

2. The court committed error in overruling the motion for new trial, the evidence of all the absent witnesses being both material and probably true, viewed in the light of and in connection with defendant's testimony as to the purchase of the horse from Scott Keeler.

3. A new trial should have been granted, because the absent testimony, if adduced, would most probably produce a different result at another trial, in that it would be four disinterested witnesses testifying to the fact of the purchase from Keeler, and would corroborate the testimony of defendant to that fact.

4. As to the impeachment of defendant by the testimony of the sheriff, Ben A. Ligon, as to statements made to him by defendant while defendant was under arrest, in addition to the argument of John E. Bell, supra, contending that such evidence was wholly inadmissible and illegitimate under provisions of our statute, article 750, we submit that if such evidence is admissible and legitimate, then it was only admissible for the purpose of impeaching the credibility of the defendant as a witness, and the court below committed a radical and fundamental error in failing and

omitting in its charge to the jury to limit and restrict this evidence to its only legitimate purpose; it being inevitable that the jury, without such limitation or restriction, must have considered it proof of defendant's guilt, and not evidence merely going to impeach his credibility. The rule is well settled, that "where evidence of a particular nature is admitted for but one purpose, as to impeach a witness, the court should instruct the jury that they are authorized to consider it for that purpose only." Branch v. The State, 15 Texas Ct. App., 96; Barron v. The State, 23 Texas Ct. App., 462; Tucker v. The State, 23 Texas Ct. App., 512; Taylor v. The State, 22 Texas Ct. App., 530; Willson's Crim. Stats., sec. 2344; Ewing v. The State, 29 Texas Ct. App., 434.

5. The court erred, as shown by defendant's bill of exceptions No. 5, in the seventh paragraph of the charge, in instructing the jury as to the purposes for which evidence was admitted of defendant's possession of another horse, at the time he was found in possession of the stolen animal. The charge was tantamount to an assumption, on the part of the court, that this other horse was also stolen, when there was not a scintilla of testimony in the record warranting such an assumption. It is radical error for the court to assume and charge upon a theory not raised by the evidence. Willson's Crim. Stats., sec. 2337.

DAVIDSON, Judge.—Appellant was convicted of the theft of a horse, and his punishment assessed at confinement in the penitentiary for a term of five years.

He sought a first continuance for the testimony of the absent witnesses John Fry, Robert Fry, E. H. Messick, and Grundy Caviness.

By John and Robert Fry defendant expected to account for his possession of the horse by proving he bought it from one Scott Keeler, and paid him therefor a valuable consideration. By Messick and Caviness it was expected to be shown that Scott Keeler was in possession of the horse, claiming and controlling him, prior to defendant's purchase of same from Keeler. The continuance was overruled, and this ruling and action of the court constituted one of the grounds of appellant's motion for new trial, which was also overruled. We are of opinion that the court should have granted the new trial for this cause. If these facts be true, or probably true, or if there was a reasonable doubt of defendant's having participated in the original taking of the horse in such manner as to constitute him a principal in the transaction, he would not be guilty of theft, however strong the facts in the case might suggest his guilt of receiving and concealing the horse, after it had been stolen by some one other than himself.

On the trial of this cause, the defendant testified in his own behalf, that he purchased the horse in question from Scott Keeler. For the purpose of impeachment, he was asked, on cross-examination, if he had not stated

to Ben A. Ligon that he bought the horse from J. J. Ferguson. He replied that he did not remember to have so stated. It was then shown by the evidence of Ligon that the statement was made by defendant. It was further shown that the defendant was under arrest at the time. The admission of this evidence was objected to, because, "at the time of said conversation the defendant was under arrest for the theft of the horse charged in this case to have been stolen, and had not been previously warned that any statement that he might make would be used against him." We do not think the objection well taken, and the court did not err in overruling the same. It may be here stated that the defendant's real name was Horace Marr, but that he traded for the horse under the assumed name of of J. J. Ferguson.

The statute, article 750 of the Criminal Procedure, relates to confessions only, and does not extend to nor include within its meaning and provision statements exculpatory of the defendant. A confession is inculpatory evidence, which connects or tends to connect the defendant, either directly or indirectly, as a guilty participant in the offense charged. Quintana v. The State, 29 Texas Ct. App., 401; Willard v. The State, 26 Texas Ct. App., 126; Eckert v. The State, 9 Texas Ct. App., 105; Andrews v. The State, 25 Texas Ct. App., 339.

The statement made by defendant did not admit his guilt, and was not so intended by him when he made it. It neither connected nor tended to connect defendant with the theft, but on the contrary, it was intended to exclude and rebut such inference. Instead of being an admission or confession of his guilt, it was intended as a denial of that fact. Same authorities.

Such statements are made as well for the purpose of showing the absence of guilt as to manifest an innocent connection with the possession of the alleged stolen property by a defendant, and are intended to operate as exculpatory of guilt and crime. This character of evidence is elicited for the purpose of explaining the defendant's possession of the property, when his right thereto is called in question. While contradictory statements made by a defendant, as to his possession of property recently stolen, may be given in evidence, yet such statements have not been not held to be "confessions" of guilt under the statute. If such accounts are to be treated as confessions of guilt, it would not devolve upon the State to disprove them, as a prerequisite to a conviction, nor would the court be authorized or required to charge the jury that such account must be disproved in order to warrant a conviction. Eckert v. The State, 9 Texas Ct. App., 105. The State is not required to disprove confessions in order to convict, but must do so when the account given of possession is reasonable and probably true.

We do not think the admitted testimony was a confession within the contemplation of the statute. Code Crim. Proc., art. 750. The testi-

mony having been admitted as impeaching evidence, it is urged that the court committed a fatal error in failing to limit it as such in the charge, and confine it to this purpose only in the trial of the case. This position is not, we think, maintainable. While it was admitted as impeaching testimony, it was clearly admissible as original evidence. It was a statement made by defendant in reference to, and exculpatory of, his possession of the horse charged to have been stolen, but at variance with his own testimony on the trial in respect to the name of the party from whom he bought it. If this be true, the fact that it was introduced as impeaching evidence did not require the charge insisted on. The State was entitled to the evidence as original testimony, as presented on the record now before us. If this be correct, it was not necessary that it should have been limited as impeaching evidence.

Because the court erred in overruling the motion for a new trial, on the ground indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present. Hurt, P. J., dissents; Simkins, J., concurs.

SIMKINS, JUDGE.—I concur in the judgment of the court reversing the judgment. I am clearly of the opinion that the statement was admissible as impeaching testimony. It is held by the court in the Meuly case, just decided, that defendant, where he testified in his own behalf, occupies the same place as any other witness in the case, and is to be treated and regarded as such, so much so that any reference to the interest of the defendant in the case in which he is on trial is reversible error.

If this be law, I can not appreciate the force of the objection that statements when made under arrest are not admissible.

The ban of silence is taken from defendant's lips. He can fully explain, if he can honestly do so, why said statements were made, and show the circumstances under which he was led to make them. If he declines to testify, the law remains as it was before.

HURT, PRESIDING JUDGE, dissenting.—I concur in reversing the judgment, but dissent from all that part of the opinion which refers to the statement made by appellant to Ligon, namely, that he, appellant, had "purchased the horse from J. J. Ferguson."

This statement, made by appellant while under arrest, without caution, was not admissible for any purpose.