PATRONIA MORALES v. THE STATE.

*No. 873.   Decided June 26th, 1896.*

### 1.  Murder—Charge of the Court.

See, criticisms upon charges of the court, upon a trial for murder which hold that. the charges were so formed and arranged as not to present fairly and clearly to the jury the rights of the defendant; and which required the analysis even of a legal mind to run them out to their proper results.   DAVIDSON, Judge, dissenting, holds, the charge, when taken as a whole, was sufficient.

### 2.  Defendant as a Witness—Impeachment of.

It seems to be settled, that a defendant, as a witness in his own behalf, is to be treated as, and his cross-examination is circumscribed only by the rules applicable to, any other witness.   That is, he may be impeached by showing that he is unworthy of belief, or that he has made statements contradictory to those he testifies to on the trial, or that he has been arrested for, and convicted of crimes showing. moral turpitude.

### 3.  Defendant, as a Witness, Cannot be Impeached by Unwarned Confessions Made While in Arrest.

A defendant, who has testified as a witness in his own behalf, cannot be impeached by the statements and confessions made by him while in arrest, and where he had not first been cautioned and warned as to the consequences of any statement or confession he might make.   Overruling, on this point, Quintana v. State, 29 Tex. Crim. App., 401; Ferguson v. State, 31 Tex. Crim. Rep., 93; Phillips v. State, 35 Tex. Crim. Rep., 480.   DAVIDSON, Judge, dissenting, upon the ground that the bill of exceptions. does not show that defendant was not warned.

### 4.  Same—Confessions of Defendant—Construction of Statutes.

Art. 770, Code Crim. Proc., permitting a defendant to testify in his own behalf, was intended to enlarge and not curtail his rights; does not repeal by implication. Art. 790, Code Crim Proc., which prohibits the use of a confession made by a party when in jail, etc., unless, under certain circumstances stated in said article and made in accordance with the terms prescribed in said article.

**5. Repeals by Implication.**

Repeals by implication are not favored, but the rule is, that if two statutes are apparently in conflict they should be construed so as to permit both to stand, if it can be done; and, especially is this so where a construction would repeal by implication a statute intended for the benefit of a defendant.

Appeal from the District Court of Angelina. Tried below before Hon. Tom C. Davis, Special Judge.

This appeal is from a conviction for murder in the first degree, with the penalty assessed at death.

The indictment charged defendent with the murder of Juarez Hernandez, in Angelina County, on the 24th of August, 1895, by stabbing and cutting him with a knife, dagger, etc. Deceased was a "tamale man," in the town of Lufkin, and was killed on the night of the 24th of August. Defendant was seen with him that day, and was the last party seen with him that night. Defendant fled, and was arrested in Nacogdoches County. Before his arrest he had told several parties that he had killed the tamale man at Lufkin. After he was arrested, and placed in jail, he made a confession to Sheriff Spradley and Deputy Sheriff Manchaca, that he had killed deceased for his money. Defendant testified as a witness. He stated that he and deceased had a quarrel; that deceased rushed upon him and he stabbed him. He denied that he had told Spradley, or Manchaca, or any one else, that he had killed deceased for his money. The predicate having been laid to impeach him, Spradley and Manchaca were allowed to testify as to his confessions made to them in jail and when defendant had not been cautioned and warned as to his statements and confessions.

No further statement is necessary.

The bill of exceptions which the defendant reserved to the admission of the impeaching testimony of his confession, will be found set out in the dissenting opinion of Davidson, Judge. It will also be seen, from the dissenting opinion, that the Reporter is instructed, by Judge Davidson, to report the charge of the court in full, as to the questions involved in the opinion of the court. The charge of the court is therefore here reproduced, from its beginning down to paragraph 9 and from paragraphs 9 to 15, inclusive, will be found fully set out in Judge Henderson's opinion. The charge is as follows, after stating the case: "Gentlemen of the jury: The defendant, Patronia Morales, is on trial, charged by bill of indictment, with the offense of murder, and having been duly arraigned, pleads not guilty; and he is presumed by the law to be innocent until his guilt is established by legal and competent evidence, beyond a reasonable doubt, and in case you have a reasonable doubt of the guilt of the defendant, it is your duty to resolve said doubt in favor of defendant and acquit him.

"A witness may be impeached by proving by another, or other witnesses, that such witness or witnesses, thus sought to be impeached, have made statements, in or out of court, different to his or their testimony given on the trial of the case, but you are not bound to disbelieve

the witness or witnesses thus sought to be impeached, but his or their testimony is still before you for your consideration, and you can, if you see fit, still give it such weight and credit as you see fit and think it en titled to.

"The State was permitted, while the defendant was on the stand as a witness, to ask him if he did not make certain statements, while under arrest, and in jail, to Spradley and Manchaca, concerning the killing of the deceased and for what purpose he killed him. The said question and the answers thereto, are before you for the sole and only purpose to enable you to weigh the testimony of the defendant, and to give it such weight and credit as you see fit, and if you cannot consider said questions and answers, nor the testimony of said Spradley and Manchaca, as evidence or circumstances of the guilt of the defendant, but only to enable you to determine what credit you will give to the defendant as a witness. In reference to the testimony of A. W. Ellis, as to what he said was told to him by the defendant in Nacogdoches jail, I instruct you, that before you can consider what was told by the defendant to said Ellis, as testified to by him, it must appear to your satisfaction beyond a reasonable doubt that such statement or confession was voluntarily and freely made by the defendant, after the defendant had first been cautioned that such confession or statement might be used against him on the trial of the case. And, you will not consider said confession then, unless you are satisfied that the defendant had a sufficient knowledge of the English language to know the meaning and intent of the caution which was given him by Ellis. And unless you believe beyond a reasonable doubt the defendant understood the caution given to him by Ellis, before he made the statement to Ellis, (if you find any was made to him) then you will not consider any statement, which he may have made to Ellis in arriving at your verdict in this case. If you find any confession was made to Ellis, by the defendant, and was voluntarily made, after being warned that it might be used against him, and the defendant knew what was said, and the import and meaning thereof, then said confession is before you for your consideration, as other evidence in the case, to be given by you such weight and credit as you see fit. It will be your duty to reconcile any conflict you may find in the testimony, so as to give credit to the whole of the testimony if you can, but if you should be unable to do so, then you will credit the whole or any part, or discredit the whole or any part of the testimony of any witness or witnesses, who have testified in the case, according as said testimony itself or the manner of the witness, in dealing with it, may impress you as being worthy or unworthy of belief. And you may consider the age, intelligence, interest in the case or apparent prejudice, if any, and all other facts and circumstances in evidence before you, in determining the credibility of the witnesses before you.

"Homicide is the destruction of the life of one human being by the acts, agency, procurement or culpable omission of another. Murder is defined as follows: Every person with a sound memory and discretion,

who shall kill any reasonable creature in being, in this State, in malice aforethought, either expressed or implied, shall be deemed guilty of murder. Murder is distinguishable from every other species of homicide by the absence of the circumstances which reduce the offense to negligent homicide or manslaughter, or which excuse or justify the homicide. Malice, or malice aforethought, as it in law is called, is a condition of the mind which shows a heart regardless of social duties, and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken. Malice, in its legal sense, means a wrongful act done intentionally without just cause or excuse. The legal import of the term differs from its acceptation in common conversation. It is not, as in ordinary speech, only an expression of ill-will and hatred, to an individual, but, it means any wicked or mischievous. intention of the mind.

"Express malice is where one with a sedate and deliberate mind and formed design unlawfully kills another, which formed design is evidenced by external circumstances discovering that inward intention, such as lying in wait, antecedent menaces, former grudges, or deliberate and concerted schemes to do bodily harm, or other circumstances showing sedate and deliberate mind and formed design, unlawfully to kill or to inflict serious bodily harm, which might probably end in the death of the person upon whom the same was inflicted. A sedate mind imports that the mind is sufficiently composed, cool, calm and self-possessed, to admit of reflection and consideration on the design, and in a condition to comprehend the nature of the act designed and its probable consequences. The act must not result from a sudden, rash, and inconsiderate design, springing from an inconsiderate impulse, passion, or excitement, however unjustifiable and unwarranted it may be, for in such case, the sedate and deliberate mind is wanting, and without it there can be no express malice. A formed design is a conclusion of the mind, arrived at by an exercise of the reasoning faculties. In determining whether murder has been committed with express malice or not, the important questions are, do the external facts and circumstances, at the time of the killing, before or after that time, having connection with or relative to it, furnish satisfactory evidence of the existence of a sedate and deliberate mind on the part of the person killing at the time he does the act? Do they show a formed design to take the life of the person slain, or do him some serious bodily harm, which, in its necessary and probable consequences, may end in death? If tehy do, the killing, if it amounts to murder, will be upon express malice, and murder in the first degree. And all murder committed in the perpetration, or in the attempt at the perpetration of robbery, is murder in the first degree. Robbery is defined by our laws, as follows: 'If any person, by assault or by violence and putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another, any property, with intent to appropriate the same to his own use, he shall be guilty of robbery.'

"Implied malice is that which the law implies from or imputes to certain acts. Thus, where the facts of an unlawful killing have been established, and there are no circumstances in evidence which tend to establish the existence of express malice, nor which tend to mitigate, excuse or justify the act, then the law implies malice, and the homicide will be murder in the second degree. The distinction between the two degrees of murder is predicated upon the difference between express and implied malice, as express malice is the essential element of murder in the first degree, so is implied malice the essential element of murder in the second degreee. Express malice is never inferred or implied; it must, in every case, be proved to exist in fact. Implied malice, however, is constructive malice, and not a fact to be proved, specifically. It is an inference or conclusion founded upon particular facts and cir-cumstances, as they are ascertained to exist.

"Manslaughter is voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified or excused by law. By the expression, 'under the immediate influence of sudden passion,' is meant: (1) That the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation. (2) The act must be caused directly by the passion arising out of the provocation. It is not enough that the mind is merely agitated by passion arising from some other provocation. (3) The passion intended is either of the emotions of the mind known as anger, rage, sudden resentment, or terror, rendering it incapable of cool reflection. By the expression, adequate cause, is meant such as would commonly produce a degree of anger, rage, resentment, or terror in the mind of a person of ordinary temper sufficient to render the mind incapable of cool reflection. Insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, are not adequate cause. The following are deemed adequate causes: (1) An assault and battery by the deceased, causing pain or bloodshed. (2) A serious personal conflict in which great injury in inflicted by the person killed and by means of weapons or other instruments of violence, or by means of great superiority of personal strength, although the person guilty of the homicide was the aggressor; provided, the aggression was not made with the intent to bring on a conflict and for the purpose of killing. In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause exists (such as has heretofore been explained) but also that such state of mind did actually exist at the time of the commission of the effense.

"Homicide is permitted in the necessary defense of one's own person under the circumstances, and subject to the rules herein set forth. (1) It must reasonably appear by the acts or by the words coupled with the acts of the person killed, that it was the purpose and intent of such person to commit the offense of murder or maiming. (2) The killing must · take place while the person killed was in the act of committing the of-

fense or after some act done by him showing evidently an intent to commit the offense.

"A party whose person is unlawfully attacked, is not bound to retreat in order to avoid the necessity of killing his assailant, but he may stand his ground and kill his assailant if it be necessary to protect himself from death or serious bodily injury."

The remaining portions of the charge will be found set out in the opinion of Judge Henderson (below), and are marked from nine to fifteen, inclusive.

[No brief for appellant has come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death, and he prosecutes this appeal. In this case the court gave a very lengthy charge. After defining murder in the first and second degrees, and malice, both express and implied, he then proceeded to charge on murder in the first and second degrees, manslaughter, and self-defense. No exception was taken to this charge, but, inasmuch as it is the duty of the court to correctly charge the law applicable to the case, it becomes our duty to review said charge. In order to present the matter properly, we will quote in extenso from the charge itself:

"(9) If, about the time and place charged in the indictment, the defendant went to the house of the deceased, and there stabbed and killed the deceased, and that such killing was in the perpetration of robbery, or in the attempt at the perpetration of robbery, then the defendant would be guilty of murder in the first degree; or if, about the time and place charged in the indictment, the defendant stabbed and thereby killed the deceased, and at the time he thus stabbed him the deceased had done nothing to or towards the defendant which, of itself, or by words accompanying it, made it reasonably appear to the defendant, viewing it from his standpoint, that he, the deceased, then intended to kill the defendant, or to inflict on him some serious bodily injury, and thereupon the defendant stabbed the deceased, and inflicted on him a wound or wounds from which he died, and the defendant thus inflicted said wound on the deceased in the execution or in pursuance of a formed design to kill the deceased, and that such design was formed in the mind of the defendant when his mind was sedate and deliberate, and therefore with express malice, such killing thus done would also be murder in the first degree.

"(10) If, about the time and place charged in the indictment, the defendant intentionally and unlawfully stabbed and killed the deceased, and at the time he thus stabbed him the deceased had done nothing to or towards the defendant which, of itself, or by words accompanying it, made it reasonably appear to the defendant, viewing it from his standpoint, that the defendant then intended to kill the deceased, or to inflict on him some serious bodily injury, then such killing under such circum-

stances would be murder in the second degree, and if you so believe beyond a reasonable doubt, you will convict the defendant of murder in the second degree, and assess his punishment at confinement in the penitentiary for any period of time you see fit, being not less than five years.

"(11) If, about the time and place charged in the indictment, the defendant went home with the deceased, and, after they had arrived at the deceased's house, the deceased cursed and abused the defendant, and in the dark made an assault upon the defendant, and the defendant stabbed and killed the deceased, and at the time he thus stabbed the deceased he was moved by anger, fear, or sudden resentment arising out of the provocation then offered to him by the deceased, then he would be guilty of manslaughter.

"(12) In connection with and bearing upon the law of self-defense, you are instructed if, about the time and place charged in the indictment, the defendant and the deceased went to the house of the deceased, and, after arriving there, the deceased made a violent attack upon the defendant, and cursed and abused the defendant, and from the acts and declarations of the deceased it reasonably appeared to the defendant that his life was in danger, or that serious bodily injury was then about to be inflicted upon him by the deceased, and, acting under such belief and apprehension, the defendant stabbed and killed the deceased, then the defendant would not be guilty of any offense, and, if you so believe, you will acquit the defendant on the ground of self-defense. And, in passing upon the question as to whether the defendant acted in self-defense, the facts and circumstances transpiring at the time of the killing must be viewed from the standpoint of the defendant, and from none other; and in connection with this portion of the charge, if you have a reasonable doubt as to what the real facts are, you will give the defendant the benefit of the doubt, and acquit him.

"(13) Keeping in view the foregoing rules of law, if you find, from the evidence, beyond a reasonable doubt, that the defendant, Patronia Morales, in the County of Angelina, and State of Texas, at any time before the 15th of October, 1895, did stab and thereby kill Juarez Hernandez, and that such killing was with malice aforethought, either express or implied, then you will convict the defendant of murder, and you will then inquire as to whether he is guilty of murder in the first degree or murder in the second degree; and in this connection you are instructed, if you believe, beyond a reasonable doubt, that defendant stabbed and killed the deceased, and that such killing was done in the perpetration of robbery, or in the attempt at the perpetration of robbery, or that he stabbed and killed the deceased in pursuance of a formed design to kill him, which design was formed when his mind was cool, calm and sedate, and deliberate, and thereby upon express malice, in either case you will convict the defendant of murder in the first degree, and assess his punishment at death or by confinement in the penitentiary for life.

"(14) If you have a reasonable doubt as to whether the defendant is guilty of murder in the first degree, you will acquit him of that offense, and inquire whether he is guilty of murder in the second degree. And in this connection, if you believe that the defendant unlawfully and voluntarily stabbed and killed the deceased with malice aforethought, as that term has heretofore been explained, but that such killing was not done in the perpetration or in the attempt at perpetration of robbery, or with express malice, as that term has heretofore been explained to you, then you will find the defendant guilty of murder in the second degree, and assess his punishment at confinement in the penitentiary for any term you see fit, not less than five years.

"(15) If you have a reasonable doubt of the guilt of the defendant of murder, you will acquit him of that offense, and inquire whether he is guilty of manslaughter; and in reference to manslaughter you are instructed that if you find, from the evidence, beyond a reasonable doubt, that the defendant, in the County of Angelina, and State of Texas, at any time within three years before the 15th day of October, 1895, did stab and kill Juarez Hernandez, and that such killing was done under the immediate influence of sudden passion, arising from an adequate cause, as these terms have heretofore been explained to you, then you will convict the defendant of manslaughter, unless you acquit the defendant on the ground of self-defense, as the term 'self-defense' has heretofore been explained in this charge. If you should convict the defendant of manslaughter, you will assess his punishment at confinement in the penitentiary for any term of years you see fit, not less than two years, nor more than five years."

We will point out such defects in the charge as occur to us. Appellant was convicted of murder in the first degree, and, if the charge on first degree, and the charges on less degrees of culpable homicide, and the charge on self-defense, were of such a character as not to present the issue clearly and fairly to the jury, they were calculated to impair the rights of the defendant. It would appear that, in the first portions of said charges above copied, the court intended merely to state the legal principles governing the case, and then to apply the principles so laid down to the facts of the case. For instance, after the court states what he has to say on the law of self-defense, he then says, "Keeping in view the foregoing rules of law," and then proceeds to charge the jury, applying the law to the facts of the case. If this be true, then as to self-defense, the court merely laid down the principles governing the law of self-defense, and has not applied the law to the facts on this subject. But it rather appears to us that the first portion of said charge was an attempt to charge the law as appplicable to the facts of the case, and the last portion was but a reiteration in different form of the preceding charges on the same subject. If this be true, then the jury were charged on the law of self-defense. In the charge of the court on murder in the first degree (see paragraphs 9 and 13) the charge as to murder in the first degree in the perpetration of robbery or attempted perpetration of rob-

bery appears to be in accordance with the approved forms. See, Sharpe v. State, 17 Tex. Crim. App., 486. In said last mentioned paragraphs, the court then proceeds further to charge on murder in the first degree committed upon express malice. The court combines with this charge something in the nature of a charge on self-defense, and, when analyzed, both of these charges in a roundabout way instruct the jury, in effect, that if they believe that the killing was not done in self-defense, but was done in pursuance of a previously formed design to kill, in a mind calm, sedate, and cool, that such killing was upon express malice. As stated, this is the effect of these charges, but it takes some analysis even of a legal mind to run out this result, and no doubt it presented to the jury a serious question for proper consideration. Paragraphs 10 and 14 contain the court's charge on murder in the second degree. In paragraph 10 no illusion is made to the state of mind in which the intent to kill may have been formed, unless we recur back to former portions of the charge. The court here merely tells the jury that if the defendant intentionally and unlawfully stabbed and killed the deceased, and that he did so not in his self-defense, and that he intended when he so stabbed deceased to kill him, then such killing under such circumstances would be murder in the second degree. No reference whatever is made to the state of mind in which the intent was formed. We would further observe, in connection with this portion of the charge, in that part referring to self-defense, that the words "defendant," and "deceased" appear to be transposed, if the record is a correct copy of the original charge, and makes it appear, "if deceased was not doing some act which caused the defendant to believe that the defendant intended to kill deceased, or inflict on him some serious bodily injury," etc. This, of course, is not what the judge means; but if this expression was contained in the original charge it was liable to confuse the jury. However, in the fourteenth paragraph of the charge, the last error alluded to does not occur, and the jury are distinctly told that, "if they believe the defendant unlawfully and voluntarily killed the deceased with malice aforethought, as that term has heretofore been defined, and that such killing was not upon express malice, or done in the perpetration or attempted perpetration of robbery, to find the defendant guilty of murder in the second degree." In paragraph 11 of the charge the court instructs the jury: "If the defendant went home with the deceased, and after they arrived there the deceased cursed and abused the defendant, and in the dark made an assault upon the defendant, and defendant stabbed and killed deceased, and at that time he was moved by anger and sudden resentment arising out of the provocation thus offered to him, the defendant would be guilty of manslaughter." And this same charge is in effect repeated in paragraph 15. This assault alluded to is not further described. In the charge on self-defense it is true that, if the jury would look back and investigate, they would see that the court had charged that if the assault endangered the life of the defendant, or threatened his person with serious bodily injury, he would

be justifiable; but in our opinion the charge on manslaughter should have itself contained the character of assault which would merely serve to reduce the homicide to manslaughter, and the charge should also have shown, in order to reduce to manslaughter, that the passion engendered must render the mind of the defendant incapable of cool reflection. But this, perhaps, was to the defendant's benefit. As stated before, this charge was not excepted to; but we think this charge, viewed singly or as a whole, did not clearly present the issues in the case, and was calculated to confuse the jury, and in a case where the death penalty has been inflicted it becomes our duty to closely scan the provisions of the charge, and see that all of the salient features of the case were fairly, lucidly, and clearly presented to the jury. The learned judge who tried this case appears to have been selected as a special judge, and doubtless this was the first occasion of his presiding in this character of cases. While the charge itself manifests a comprehensive knowledge of the questions involved in the case, we do not think the various features of the case were as clearly presented as they should have been; and on a new trial of this case we apprehend, as the learned judge who tried this case now adorns that bench, that there will be no difficulty about a proper charge in this case.

When the appellant was on the stand in his own behalf, the State asked him if he had not told Spradley and Manchaca, the sheriff and deputy sheriff of Nacogdoches County, while he was in the jail of said county, as follows: "Didn't you tell Manchaca that you killed deceased for his money, and that the negro, Dick Sherman, got a part of the money, and you threw the other money away at the time you was arrested?" and "if he didn't tell Spradley he killed deceased for his money, but that he did not get any money." Counsel for the defendant objected to this testimony, because the defendant at the time was in jail, and had not been cautioned by the sheriff as the law requires. Counsel for the State insisted on this testimony for the purpose of laying a predicate to impeach said witness. The defendant answered that he had not made any such statements. The State was then permitted to prove by said Spradley that said defendant did tell him, while in the jail of Nacogdoches County, that he killed deceased for his money, and that he did not get any money; and by Manchaca that he killed deceased for his money, and that the negro, Dick Sherman, got a part of the money, and that he threw the money away at the time he was arrested. This testimony was also objected to on the ground that the statements were made in jail, and the defendant had not been duly warned before he made said statements. The objection was overruled, and the defendant reserved his bill of exceptions. Art. 790, Code Crim. Proc., 1895, which brings forward the Act of the Twenty-first Legislature, passed in 1889, provides as follows: "Any defendant in a criminal action will be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him; nor shall the same be alluded to or commented on by counsel in the case;

provided that wherever there are two or more persons jointly charged or indicted and a severance had, the privilege of testifying shall be extended only to the person on trial." Art. 789 of said Code Crim. Proc., 1895, provides as follows: "The confession of a defendant may be used in evidence against him, if it appear that the same was freely made, without compulsion or persuasion under the rules hereafter prescribed." Article 790 provides: "A confession shall not be used, if at the time it was made the defendant was in jail, or other place of confinement, nor while he is in the custody of an officer, unless such confession be made in a voluntary statement of the accused taken before an examining court in accordance with law, or be made voluntarily, after having been first cautioned that it may be used against him, or unless in connection with such confession he make statement of facts, or of circumstances that are found to be true, which conduces to establish his guilt—such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed." In Quintana v. State, 29 Tex. Crim. App., 401, a construction of these statutes came before the court. In that case, however, it was said that the testimony upon which the predicate was laid while the defendant was in jail, and upon which he was impeached, was not a confession. In that case the charge was one of theft of a horse. "The defendant took the stand as a witness in the case, and testified that he had never had possession of the horse alleged in the indictment to have been stolen. The District Attorney, on cross-examination of the defendant, asked him if he had not stated to the witness, Bailey, that he (defendant) had had possession of said horse, and that he had gotten the same from another Mexican in El Paso County, near Mundy's Springs. Defendant replied that he had not so stated; whereupon Bailey was brought on the stand, and testified that defendant had so stated to him in the presence of the defendant's counsel; and it further appeared that this statement was made while the defendant was in jail and when he had not been warned." In the opinion of a majority of the court as to this testimony they say: "Instead of being an admission or confession of guilt, the statement of the defendant was a denial of that fact. If he received the horse from another Mexican in El Paso County, he could not have been guilty of the theft of the horse in New Mexico, even if he knew that the horse was stolen when he received it." And said case was followed in the case of Ferguson v. State, 31 Tex. Crim. Rep., 93, which was similar as to the impeaching testimony, and the court also treated that as not a confesssion. The court, however, in the discussion of the question, appears to incline to the view that, regardless of whether or not the impeaching testimony was a confession, the same rule would apply, and that it would be permitted for the State to go into the jail, and lay the predicate for the contradiction of the defendant, when he is a witness on his own behalf, as to a confession made in the jail by him without having been warned, and then to contradict him as to such confession. It has also been followed in Phillips v. State, 35 Tex. Crim. App., 480. As far as exam-

ined, none of the authorities cited in said case of Quintana are exactly in point, and, with the exception of the Phillips case, which follows the Quintana case, it is not believed that any authority can be found which lays down the proposition that a defendant, when he becomes a witness in his own behalf, can be impeached as to confessions made by him while in jail, not having been warned. The decisions cited, however, do go to the extent of holding that, when a defendant becomes a witness on his own behalf, he is to be treated as any other witness, and his cross-examination is circumscribed only by the rules applicable to any other witness. He may be impeached by showing that he is unworthy of belief, and he may be impeached by showing that he has made contradictory statements to those testified by him on the trial; and he may be contradicted by showing that he has been arrested for or convicted of crimes showing moral turpitude, which go to his credit like any other witness.

The exact question here presented, however, is whether or not the defendant can be examined as to a confession made by him while in jail, not having been warned, and a predicate thus laid for his impeachment, and the State then be permitted to show by witnesses that he made a confession of the crime alleged against him while in jail; for, as to the fact that the matter inquired about in this case was a confession, there can be no question, and it is not necessary here to discuss the question involved in the cases above referred to, as to whether the statements there made by the defendants were in the nature of a confession or not. The statute says that a confession made by a defendant while in jail cannot be used against him unless he was duly warned. This statute is without limitation, and apprehends that the confession cannot be used against him for any purpose; and to use it for the purpose of impeaching him would certainly be using it against him. It is believed that Article 770 was passed to enlarge the defendant's rights, and not in any sense to curtail them, and, if said article is to have the effect to authorize the State to lay a predicate for the impeachment of a defendant as to his confession made in jail without due warning, then its effect would be to repeal by implication so much of Article 790 as guards a confession made by a defendant when in jail. A repeal by implication is not favored as a rule of construction, but the rule is that both statutes shall be permitted to stand if this can be done. And especially is this so where a construction would repeal by implication a statute intended for the benefit of a defendant. These two statutes, in our opinion, are susceptible of that construction which will permit both to stand. A defendant in a criminal case can become a witness for himself, and can be treated as any other witness, except as inhibited by some other statute. As we have seen, Article 790 prohibits the use of a confession by a defendant while in jail, unless under certain circumstances stated in said article; and the fact that he may become a witness does not, in our opinion, repeal by implication or render nugatory the safeguard guarantied him against the use of any confession made by him while in jail, unless

such confession is made in accordance with the forms prescribed in said article. It is true, in this case, the court limited the purpose of this testimony to the impeachment of the defendant as a witness. While, as stated, this was a limitation, yet it was an authority to the jury to use the confession for a purpose against the defendant. The confession itself was a direct confession of guilt made by the defendant while in jail and without proper caution. If it had been made out of jail, or under proper warning given, it could have been used as original evidence against the defendant of the most damaging character; and, however much the jury may have felt constrained to regard the testimony only as directed by the court, it would present to them an exceedingly difficult problem to do so. However that j 'ay be, in our opinion, the testimony could not be used against defendant for any purpose; and whatever is said in the cases above cited that indicates a contrary view is hereby overruled. It is not necessary to discuss the other assignments of error, but, for the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

HURT, Presiding Judge, concurs.

---

DAVIDSON, JUDGE, dissenting.—I desire to enter my dissent from the opinion of the majority of the court upon two questions: It is held that the charge is insufficient. I do not propose to enter into a discussion of this question, or the different phases of the charge. The Reporter, in the statement of the case, will report the charge in full as to the questions involved in the opinion of the court. I think the charge is sufficient, and correctly presents the issues of the case. And I especially desire to dissent from that phase of the opinion, which, if not directly, indirectly holds that the charge as an entirety cannot be looked to by the jury. It seems from the opinion, whether intended or not, that it is held that, after having given a definition of the different phases of the homicide, in applying the law to the facts, all of these different ingredients set out in said definitions should be repeated in every phase of the charge in applying the law to the facts. I think this is wrong. Having given a full and ample definition of murder in both degrees, and malice, manslaughter, adequate cause, and sudden passion, it was sufficient, in applying the law to the facts, to call the jury's attention to the fact that these matters had been theretofore fully expressed in previous portions of the charge. I desire to dissent from that portion of the opinion which reverses the case upon the ground that the defendant was not warned before his confession, made to Spradley and Manchaca, was used against him as impeaching testimony. I do not desire here to discuss the question as to whether or not a defendant can be impeached by using unwarned confessions. I express no opinion at this time upon that question. What I desire to say here is, that the bill of exceptions does not show that the defendant was unwarned at the

time he made the confessions testified to by the witnesses, Spradley and Manchaca. The bill recites, "that the State, for the purpose of impeaching the defendant, proved by the witness, J. M. Spradley, that the defendant told witness, while under arrest, in jail, in the town of Nacogdoches, on the same day defendant was brought to Lufkin, that defendant told said Spradley that he killed deceased for his money, but that he got no money; and by the witness, Manchaca, that he (defendant) killed deceased for his money, and that the old negro, Dick Sherman, got a part of the money, and that he threw the rest of said money away when he was arrested. The defendant objected to the introduction of said evidence, for the reason that the defendant had not been cautioned by either said Spradley or Manchaca at the time of or before such statement was made, if any, that any statement the defendant might make to either of them might be used against him as evidence at the trial of his case, and the State could not be permitted to prove the statements or confessions made by the defendant, while under arrest, without first showing that the defendant had been duly cautioned as the law directs, for the purpose of impeaching said defendant, or for any other purpose. Which objections the court overruled, and admitted the testimony." It will be seen that this bill does not recite, as a fact, that the defendant was not cautioned. It simply states, as his ground of exception, that the defendant was not cautioned. By signing and allowing this bill, the judge did not establish the truth of the grounds set forth. in the bill, but simply certified that such exceptions had been presented to him, and that he had overruled the same. In this state of case, we must presume that the objections urged were not sustained by the evidence; else the bill of exceptions would have shown it. It is well settled in this State, by an unbroken line of authorities, so far as I am informed, that where the court signs and approves a bill of exceptions, he does not undertake thereby to certify as correct the grounds of objection; for, if he did, there is hardly a bill of exceptions that comes before an appellate court but what would require a reversal of the judgment. He simply certifies the fact that the bill of exceptions was taken and the matters urged as grounds of objection. See, Smith v. State, 4 Tex. Crim. App., 626; Hennessy v. State, 23 Tex. Crim. App., 340; Huffman v. State, 28 Tex. Crim. App., 174; Ezzell v. State, 29 Tex. Crim. App., 521; Mallory v. State (decided at Austin term, 1896), 36 S. W. Rep., 750. In such state of case it has been held: "The judge's signature to or authentication of the bill does not establish the truth of his ground of exception. It merely certifies that the bill was presented to him, and his disposition of it." Ezzell v. State, 29 Tex. Crim. App., 521. It will be seen, by reference to the bill above quoted, that the only allusion in the entire bill to the fact that the defendant may or may not have been cautioned is urged simply as a ground of objection to the admission of the testimony. I desire, therefore, to dissent from that portion of the opinion which overrules the unbroken line of decisions in this State with reference to this question without even an allusion to them. If the

rule announced by the majority in this case is to govern bills of exception in the future practice in this State, it will necessitate a reversal of almost every case that is brought before this court. When confessions, dying declarations, and testimony of that character is introduced, there is a predicate to be laid. This, of course, devolves upon the State, before using it as original testimony. Whether a proper predicate has been laid for the introduction of such testimony is not a question for the jury, usually, but for the decision of the court; and where bills of exception are taken to the introduction of this testimony, they must recite as a fact, not as a ground of objection, that the proper predicate was not laid authorizing the introduction of such evidence. As said before, I do not desire to enter into a discussion of the case as to whether confessions made after arrest, the accused not being warned, can be used as impeaching testimony. An intimation of that sort was thrown out in the Quintana case, 29 Tex. Crim. App., 401, and expressly held in the opinion of the court in Phillips v. State, 35 Tex. Crim. Rep., 480. There is another rule in this State, and so far as I am apprised, backed by an unbroken line of decisions, that a bill of exceptions must manifest what is the supposed error relied upon by the party taking the bill, and that no inference will be indulged in favor of the allegations of the bill. We think it must be clear and explicit, and it devolves upon the party taking the bill to make it so. For collated authorities, see, Willson's Crim. Stat., §§ 2368, 2516. If there is an opinion on the converse of this proposition in Texas, it has escaped my attention. Viewing this bill in the light of the authorities cited, it is not sufficiently shown that the defendant was not cautioned at the time he made the statements testified to by Spradley and Manchaca, and the only way we can arrive at that conclusion is by indulging the presumption and inference that it was so because the defendant objected on that ground. This we cannot do, under the authorities already cited. For the reasons indicated, I dissent from the opinion of the majority of the court.