## ANNIE YOUNG v. THE STATE.

### No. 972. Decided February 22, 1911.

**1.—Murder—Charge of Court—Impeachment.**

Where the testimony is not only for impeachment but original, there was no error in the court's failure to limit the same to impeachment.

**2.—Same—Evidence—Declarations of Defendant.**

Where the defendant testified, upon trial of murder, she was like any other witness and could be cross-examined and her testimony contradicted by other witnesses; besides, the defendant being convicted of manslaughter, there was no error.

**3.—Same—Charge of Court—Self-Defense—Actual and Threatened Attack— Threats.**

Where, upon trial of murder, the court in his charge on self-defence properly submitted the law of threats and of an actual and threatened attack by deceased, there was no error.

**4.—Same—Charge of Court—Communicated Threats.**

Where, upon trial of murder, there was evidence of communicated threats by the deceased against the defendant, the court properly submitted this issue to the jury.

Appeal from the District Court of Titus. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted for the murder of Monie Huel, and was convicted of manslaughter and her punishment fixed at two years in the penitentiary.

The evidence clearly shows that the killing occurred on Christmas night, 1908, at a party, where there were many persons present. There were only four witnesses introduced by the State who saw the killing. They all substantially agreed in their testimony. It was to this effect: That there was a dance at a party on Christmas night at Tom Barrett's house; the deceased came into the room where the dancing was going on and sat down in a chair in about two feet of the fiddler; between five and ten minutes after he sat down the appellant came in the house and danced around with the others until she got right at the deceased; she then walked up to him, placed her hand on his shoulder and stabbed him in the breast with a long-bladed pocketknife; the deceased jumped up and exclaimed, "What does that woman mean?"—fell backward and died immediately. The deceased had said nothing to the appellant, and was not attempting to do anything to her

nor to say a word to her; as soon as she stabbed deceased she made her way through the crowd out of the house, exclaiming as she went, "God damn him, I told him I would kill him and go to the State penitentiary."

The appellant introduced no evidence by anyone who saw and heard what was done and said on this occasion. She, however, testified, and among other things to this effect: That she had lived with the deceased about three years; was not married to him; that he whipped her a great many times during the time they were living together; that he had plead guilty twice to whipping her; that on Christmas day he whipped her three times, the last time about a half hour before she went to the party where she killed him; that he, at this last time, beat her and got her down and cut her on the back in two or three places, and also struck her with a piece of scantling and bruised her eye just before she went in the house to the dance; that very soon after the killing the constable and sheriff arrested her, and while they were putting her in jail, after she was arrested, she told them that the deceased had cut her in two or three places on the back and that he had threatened to kill her.

She also testified that just after she came into the house where the dance was and was standing near the fireplace, the deceased came in and said, "I thought I told you not to come to this dance;" that she replied, "You see I am here;" that he then said, "Did I not tell you that the next time you turned me in it would be in hell?" That he then started at her with his knife drawn back as if to cut her. She then says: "I struck him in the breast with my knife and run out of the house. I cut the deceased because I thought he was going to kill me; he had threatened to kill me; he had been beating me and he whipped me three times that day; I cut him in self-defense; he had a very long knife and could have killed me with it."

She introduced witnesses who testified that the deceased had whipped her that day and also beat and whipped her on previous occasions.

The State, in rebuttal, among other things introduced the sheriff and constable, who each testified in substance that when she was arrested and when they put her in jail she did not say one word to them about the deceased having cut her on the back. The sheriff testified that he did see a bruised place on one of her eyes and it was swollen some; that he did not see any sign of any cut on her, and saw no other sign on her except the bruise about the eye. The constable testified that he saw no sign on her at all; that he looked her squarely in the face, and if there were any bruises or marks on her he did not see them, and that there were none; that he saw no sign on her at all where she was hurt.

We have thus given the substance of this testimony so that we could more clearly show the application of our decision on the appellant's complaints charging error in the trial.

The appellant has two bills of exception, one to the testimony of the

sheriff and the other to the testimony of the constable, given above, on the grounds that the appellant was under arrest and did not make a confession in writing and was not warned before making such statements; that the testimony by the sheriff and constable was an attempt to impeach her on immaterial and irrelevant matters, and that it was injurious and prejudicial to her. In their motion for new trial counsel for appellant also claim that the court erred in failing to limit the testimony of the sheriff and constable to impeachment of the defendant only, and that he gave no charge on the subject.

There was no error in the ruling of the court and the failure to charge limiting the testimony of the sheriff and constable to impeachment for several reasons. This testimony was not for impeachment only, but, was original testimony, so that a charge limiting it to impeachment would have been improper. Neither was it a confession such as is contemplated by the statute on the subject of confessions. The appellant, when she testified, was like any other witness, and could be asked questions, and not only disputed, but original testimony could be introduced to show any of her statements untrue. Ferguson v. State, 31 Texas Crim. Rep., 93; Quintana v. State, 29 Texas Crim. App., 401; Corporal v. State, 24 S. W. Rep., 96. Besides this, the appellant was convicted for manslaughter only, and even if this testimony was improperly admitted for any reason, no injury occurred or could have occurred to the appellant by reason thereof. The evidence in this case—the whole of it—shows unquestionably that the appellant was guilty of manslaughter at least, unless she was entitled to an acquittal on her plea of self-defense.

The charge on self-defense was given by the court as follows: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided that he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe defendant killed the said Monie Huel, but further believe that at the time of so doing the deceased had made an attack on her which, from the manner and character of it and relative strength of the parties, and the defendant's knowledge of the character and disposition of deceased, caused her to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear the defendant killed the deceased, then you should acquit her; and if the deceased was armed at the time he was killed, and was making such attack on defendant, and if the weapon used by him and the manner of its use was such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or

aimed to inflict serious bodily injury upon defendant. I further charge you, as a part of the law of self-defense, as follows:

"Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threat so made. Now, if you believe from the evidence that the defendant cut deceased with a knife and thereby killed him, but you believe that deceased had made threats against the life of defendant and had done some act at the time of the homicide that manifested an intention to execute the threat, then you will find defendant not guilty on the ground of self-defense. The act done by deceased at the time of the homicide must have been some act that was reasonably calculated to cause defendant to believe and must have caused her to believe that deceased was then about to execute the threat," the court having, in other portions of the charge, given the proper definitions of whatever terms were necessary on the subject. Appellant complains of this charge solely on the ground that it limited her right to "defend herself only against a consummated attack." Taken as a whole, this charge does not do this, and correctly submits the question of self-defense as to this ground of complaint. She was not borne out in her testimony of self-defense by any fact or circumstance shown or testified to on the trial of this case. The jury, as it had a right to do, evidently did not believe her statement of what actually occurred between the deceased and her at the time she killed him.

The appellant also claims that the court erred in that part of the charge just above quoted on the subject of threats made by the deceased to kill her, because it is not shown that they were communicated to her prior to the killing, and that she introduced them only to show the deceased's intent at the time and just before the killing. She introduced this testimony, and one of her witnesses testified that the deceased had told him several days before that he intended to kill her; she herself also testified that the deceased had threatened to kill her. This being the case, and this testimony introduced solely by herself, there was no error in the charge of the court complained on this subject.

It is our opinion that no reversible error is shown in this record, and the judgment will be affirmed.

*Affirmed.*