SAM E. BROWN, ALIAS R. L. JONES, v. THE STATE.

No. 2558. Decided June 18, 1913.

**1.—Forgery—Evidence—Confessions—Impeachment.**

Where, upon trial of forgery, testimony as to the declarations and confessions of defendant made while under arrest was admitted in evidence, and the same were not in writing and defendant was not warned at the time, the same were inadmissible; neither could this testimony be used to impeach the defendant.

**2.—Same—Rule Stated—Confession—Arrest.**

Where defendant is under arrest and makes statements or confessions, which are not reduced to writing and do not conform to the requirement of the statute and he takes the witness stand on the trial of the case, he can not be examined about statements of a criminative nature made by him while so under arrest. Following Morales v. State, 36 Texas Crim. Rep., 234, and other cases.

**3.—Same—Charge of Court—Passing Forged Instrument—Variance.**

Where, upon trial of forgery and passing a forged instrument, defendant was charged with passing said check on D, a charge of the court instructing

the jury if the check was passed upon B, etc., to convict defendant, was error.

Appeal from the District Court of Jones. Tried below before the Hon. Jno. B. Thomas.

Appeal from a conviction of forgery and passing forged instrument; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Brooks & Brooks* and *T. S. Whiteley* and *C. P. Chastian,* for appellant.—On question of admitting defendant's declarations while under arrest: Brown v. State, 55 Texas Crim. Rep., 572, 118 S. W. Rep., 139, and cases cited in opinion.

On question of court's charge on passing check: Huntly v. State, 34 S. W. Rep., 923, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged by indictment with forgery. The second count charges him with passing a forged instrument to O. C. Brown. In a general way, it appears from the evidence that appellant had been working for W. L. and E. B. Harrison during the spring of 1912, and had been paid by them checks on different occasions. That during the year 1912 appellant was in the town of Hamlin, Jones County, and went into the store of D. J. Payne, in which O. C. Brown was the clerk. Appellant told Brown that he wanted to purchase a suit case and collar. Brown showed appellant a suit case and collar and appellant told him he would take the articles, whereupon Brown took the suit case and collar to the cashier's stand, which was located in the rear of the building, and set it down in front of the cashier's stand. It is further shown that at this time appellant presented the check in question to O. C. Brown in payment of the goods. That the check was drawn in favor of R. L. Jones for the sum of $23.50, and endorsed on the back by R. L. Jones, and signed by Harrison Bros. Brown, who was clerk for Payne, testified he made out a ticket for the goods, which amounted to $4 and handed the ticket to the cashier of the Payne Mercantile Company; he cashed the check, taking out $4, handing appellant the remaining $19.50. After this transaction appellant left the store and was next seen at Sweetwater, where he was arrested by Johnson, the city marshal. During the trial appellant took the stand in his own behalf, admitted buying the goods from Brown and giving him the check, and the other facts attending the purchase of the goods. He also testified two or three days before the check was cashed that he was at the home of W. L. and E. B. Harrison. That he occupied a room with one of the Harrison boys and saw a piece of paper on the floor in the room, picked it up, examined it, and found that it was a check. This was the check he gave subsequently to Brown. Appellant also testified the check was given for $23.50 to R. L. Jones, signed

by Harrison Bros., and endorsed on the back by R. L. Jones. He denied forging the check, or putting anything in the body or on the back of it. It is also shown two checks in the record were photographed, which were admitted by the two Harrisons to be genuine and apparently bearing the same signature as the alleged forged check. The cashier of the First National Bank of Anson, after examining the two checks, admitted to be genuine, and the alleged forged check, testified that in his opinion the same person signed all three checks. This is substantially the testimony, or a sufficient amount of it to dispose of the case.

Appellant testified in his own behalf. On cross-examination the district attorney was permitted to ask questions and elicit answers as follows: "Q. Where did you tell Mr. Johnson where you got the check, as to how you came by it? A. I didn't tell Mr. Johnson, that I know of, how I came by it. Q. Well, did you tell him that you found it? A. No, sir; I did not. Q. Did you tell him where Harrison Brothers lived? A. No, I don't remember that I did; no, sir. Q. Didn't you tell Mr. Johnson there that you wanted to go to Harrison to see if you could fix this thing? A. I don't remember it. Q. Didn't you want to call up Harrison Brothers to see what you could do about fixing this check, then and there? A. I don't remember what I did ask him now. Q. Well, will you say yes or no to it? A. I will say no. Q. Will you say no, that you did not offer to, that you did not try to get Mr. Johnson to let you call up Harrison Brothers to straighten up this matter with them? A. I might have wanted to. I did want to pay it. Q. What did you want to do about it? A. I wanted to settle it off. Q. What did you tell Mr. Milsap about where you got this check? A. I did not tell him where I got the check. Q. Did you tell O. C. Brown that you found it? A. No, sir; I didn't. Q. What did you tell O. C. Brown about fixing or squaring the matter with Harrison Brothers?" Defendant objected to all these questions and answers, because it was an attempt upon the part of the State to get a confession before the jury that would not be a legal confession; and it is further recited as a fact that at the time these statements were made defendant was under arrest and in charge of an officer. These matters were not in writing, and this was urged as an objection. Defendant was not warned, and this was urged as an objection, and further, that it was a pretense to lay a predicate to impeach defendant by illegal testimony and because said testimony was irrelevant, immaterial and inadmissible for any purpose and highly prejudicial to the rights of defendant. These objections were all overruled and the testimony admitted, and the bill is signed without qualification.

Another bill recites that after defendant had testified and denied making the statements to the deputy sheriff, the State was permitted to call him and over objections the following matters occurred: "Q. Just tell what he said about the check. A. He did make this explanation, he wanted to see Harrison Brothers. He wanted to straighten it up and he wanted to know if I would carry him by to see

Harrison Brothers by the ranch as I came on bringing him to jail. Q. Did you see Harrison Brothers? A. No, sir; I did not. Q. Did he say anything about finding the check? A. No, sir; he didn't. He just talked continually. I could hardly tell all about paying the check, and he wanted to straighten it up and he wanted to see Harrison Brothers and he wanted to pay this difference, and he wanted to turn in the money, and go and get the suit case, and then go and see Harrison Brothers. That he thought he could straighten it up with them, and he also said on the way down there that he was R. L. Jones, that is, from Hamlin down to the ranch. Mr. Bigby asked him the direct question, who R. L. Jones was, and he said that was himself. Q. When was it that he told you that his name was Sam E. Brown? A. I believe that was directly after we. got on the train." It is also recited that defendant was under arrest when all these matters occurred, and the statements were not in writing nor sworn to by defendant, that he was not warned, that it was an attempt to impeach and discredit defendant by illegal testimony, and because irrelevant, immaterial and prejudicial, etc.

Another bill recites that defendant testified in his own behalf and denied making certain statements to Johnson, the city marshal. The State was permitted to call this witness, and the district attorney to ask him, over objections, the following questions: "Q. What did he say about it (when arrested at Sweetwater)? A. I arrested him and I told him what he was charged with. That he was charged with forgery at Hamlin, and he went on and made a statement to me that he was sick, and that was the only way he had to get to Mexico to his mother, or some of his folks, and he wanted me to give him a chance. He said if he could get hold of Harrison Brothers that he had some folks there with Harrison Brothers and that he could get his folks to make it all right with them, and he could get home to his mother. Q. Did he say anything about finding the check? A. No, sir; he did not say anything about finding the check. I told him he was charged with forgery and that he was identified as the man, and that I was going to hold him for the Jones County officials. He said he was the man, all right. Q. What did he say about being R. L. Jones? A. He did not tell me or make any mention of R. L. Jones. He told me that his name was Sam Brown, and in fact I did not know that R. L. Jones' name was on the check, or anything of the kind. I just told him he was wanted on forgery count, was all, you know." All the objections heretofore mentioned in the other bills were urged.

The witness Brown was also recalled, after defendant had testified, and was permitted to testify to the same matters and under the same circumstances as mentioned in the previous bills. There is some difference between the testimony of Brown and the other witnesses. Perhaps it is well enough to mention what Brown testified. With reference to Brown the following matters occurred: "Q. What did the defendant tell you about the check on the way from Sweetwater to Hamlin?

A.  Well, we was talking about the check.  I do not remember his exact words, but he said something about he believed he could straighten it up with Harrison Brothers and that he wanted to go home and see his mother.  That was the reason why he did it, and that he believed he could straighten it up with Harrison Brothers, with Mr. Harrison, if he could talk with him, talk it over with him, and he asked Mr. Milsap if he could carry him up there to see Mr. Harrison, and Mr. Milsap told him yes."  The same objections occurred as to the previous bills. These bills make it appear that appellant, while on the witness stand, on cross-examination, these matters were inquired into by the district attorney, which were criminative in their nature or expected to be, and after denying them these witnesses were put on to prove that he did say to them.  This testimony was inadmissible from the defendant, and the testimony of the other witnesses was also inadmissible.  Appellant was under arrest, and any statement that he made could not be used against him as original testimony, because the statute requires that after being warned and the usual precaution taken, his statement must be reduced to writing.  This was not done, and these bills of exception so show it.  Since the Morales case, in 36 Texas Crim. Rep., 234, the rule has been in Texas that where a defendant is under arrest, that he can not be examined while on the witness stand about statements of a criminative nature made by him while under arrest.  That decision was rendered prior to the time the statute was enacted requiring his confession to be reduced to writing.  Now no evidence can be used against a defendant while he is under arrest unless reduced to writing.  So we have the double reason, first, that he was under arrest, and, second, his statement was not reduced to writing after being warned.  It was not legitimate testimony and erroneous for the court to permit the district attorney to inquire into these statements made while he was under arrest, and it was erroneous to permit these witnesses to testify to statements defendant made to them by him while under arrest.  That these matters were prejudicial and of a serious nature is not to be doubted under the facts of this case.  Why rulings of this sort will be had and cases sent before this court with rulings of this sort, fatal to them in the face of all the decisions, this court does not understand.  However, if trial courts will permit and continue and persist in running over the law of the land, both statutory and opinions, this court will be compelled to reverse the judgments.

The court charged with reference to the second count that if the check was passed upon Brown, etc., that the defendant would be guilty. Appellant objected to this charge and asked the following: "You are charged that in order to warrant a conviction of the defendant under the second count, etc., you must believe from the evidence beyond a reasonable doubt, first, that the check alleged to have been passed by defendant was forged; second, that defendant knowingly passed as true said check on O. C. Brown, the prosecuting witness herein, and in this

connection you are charged that it is not sufficient to warrant a conviction of defendant that he knowingly passed as true said alleged forged check on a Mr. Dowd, cashier for the Payne Mercantile Company of Hamlin, Texas." Under Huntley v. State, 34 S. W. Rep., 923, and Riley v. State, 44 S. W. Rep., 498, we believe that under the facts of this case the requested charge should have been given. Those cases seem to be directly in point. Upon another trial if the case should be developed as is manifested by this record, we suggest that the trial court give the charge requested, or one in substance the same. The charge should be applied to the facts. If Brown received the check, this would be sufficient. But if Dowd received it from appellant, then the charge should conform to such facts.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*